BERTHA KNOX *et al.*, *by their next friend, Jordan Knox,* v.
THE BOARD OF EDUCATION OF THE CITY OF INDE-
PENDENCE *et al.*

1. CITY SCHOOLS — *White and Colored Children — No Separation.* Until
   the legislature clearly confers power upon boards of education of
   cities of the second class to establish separate schools for the educa-
   tion of white and colored children, no such power exists.

2. CASE, *Affirmed.* The legislature of the state has not given, or at-
   tempted to give, to the boards of education of cities of the second
   class, the power to establish separate schools for the education of
   white and colored children, or to exclude from the schools established
   for white children, the colored children, for no other reason than
   that they are colored, or of African descent. (*Board of Education v.
   Tinnon,* 26 Kas. 1.)

*Original Proceeding in Mandamus.*

THIS is an action of *mandamus* commenced in this court on
October 8, 1890, by *Bertha Knox* and *Lilly Knox,* both col-
ored, by their next friend, Jordan Knox, to compel *The Board
of Education of the City of Independence* and S. M. Nees,
superintendent of the public schools of that city, to permit
the plaintiffs to attend the school-rooms of the public schools
of that city to which they allege they are entitled, according
to their grade, regardless of and without any distinction of
their race or color. After the return or answer was filed to
the alternative writ, the case was submitted upon the follow-
ing agreed statement of facts:

"That the city of Independence, Kansas, is a city of the sec-
ond class; that G. L. Remington, J. M. Nevins, J. H. Spen-
cer, Goodell Foster, H. P. Wiltsie, E. A. Hamilton, A. B.
Wiltsie, M. Westbrook, E. B. White, H. L. Payne, W.
Stephenson and W. R. Brown are the duly-elected and act-
ing members of the board of education of said city, and that
S. M. Nees is the duly-elected and acting superintendent of
the city schools of said city; that in said city there are four
school buildings, to wit: First-ward school building, second-
ward school building, fourth-ward school building, and fifth-
ward school building; that there are employed by the school

board, besides the superintendent, nineteen teachers, and that the number of pupils enrolled is about eleven hundred; that both white children and colored children of scholastic age reside in each of the five wards of said city; that the said plaintiffs, Bertha Knox and Lilly Knox, colored children, are residents of the second ward of said city, and are respectively ten years and eight years of age, and that they are of scholastic age; that they reside 130 yards from the second-ward school building of said city, and 2,300 yards from the fourth-ward school building in said city; that in attending school at the fourth-ward school building they are required to pass by or near the second-ward school building; that Bertha Knox belongs to the second primary grade, and that Lilly Knox belongs to the first primary grade, and that said grades are taught in the second-ward school building of said city; that the room in the second-ward building, known as the 'second primary,' is taught by Miss Belle Bates, and that in said room there are thirty-five desks with a seating capacity of seventy; that the enrollment in said room on September 15, 1890, was as follows: Twenty-two in one class, and eighteen in another, and that on October 10, 1890, the enrollment was twenty-nine in one class, and twenty-two in the other, or a total of fifty-one; that the room in said second-ward building, known as the 'first primary,' is taught by Miss Bertha Canary, and in said room there are thirty-five desks with a seating capacity of seventy; that the enrollment in said room on September 15, 1890, was as follows: A class, 11; B class, 14; C class, 9; total, 34; on October 10, 1890, the enrollment in said room was as follows: A class, 15; B class, 18, and C class, 20; total, 53; that on September 15, 1890, the said plaintiffs with their father and next friend, Jordan Knox, applied to the respective teachers as aforesaid at the second-ward school building, and asked to be admitted to said second-ward school building, and into the grades as follows, to wit: Bertha Knox asked to be admitted to the second primary, and Lilly Knox asked to be admitted to the first primary, and that plaintiffs were referred by the respective teachers of said two grades to the superintendent, Mr. S. M. Nees; that thereafter, and upon the same day, the said plaintiffs with their said father and next friend, Jordan Knox, applied to the said superintendent, Mr. S. M. Nees, and asked to be assigned to the first and second primary grades at the second-ward school building in said city; that the superintendent, Mr. S. M. Nees, assigned plain-

tiffs to a room in the fourth-ward school building, where said first and second primary grades are taught, and where the board of education had made convenient, suitable, and sufficient provision for plaintiffs, and each of them, at said designated room; that said room in which said first and second primary grades are taught, as aforesaid, at said fourth-ward school building, as aforesaid, is taught by Mrs. Clara McCord, a competent and well-qualified teacher, and that said room is furnished in the same manner, and just as well, and is just as comfortable as any other room in said fourth-ward building, or as any room in the first, second, or fifth-ward school buildings; that other children, both colored and white, who live in the second ward, and in the fifth ward of said city, and who live near where said plaintiffs reside, and who live just as far from the fourth-ward school building as do said plaintiffs, are required and compelled to attend school at the fourth-ward school building, notwithstanding the fact that the grades to which they belong are taught at the second-ward school building and at the fifth-ward school building, but that there are no white children who belong to the same grade that plaintiffs do, who now live in said second ward, who are sent, at the present time, outside of said second ward; that all of the colored children of the said city, who belong to the primary and intermediate grades, are assigned to the room in the fourth-ward school building, which is taught by Mrs. Clara McCord, and are required to attend there, but that whenever they are capable of passing the examination, (the usual and customary examination required by the board of education for those who are to be advanced,) they are advanced from said grades and are assigned to the 'grammar school,' which is in the first-ward building, and whenever the said children are competent, and can pass the usual and customary examination, they are advanced from the grammar school to the high school, which latter is also in the first-ward school building; that the said grammar school and the said high school are attended by both white and colored children whenever they are sufficiently advanced; that if the enrollment in said aforesaid room, taught by Mrs. Clara McCord, is fifty pupils or over, the said board of education, in that event, have authorized and instructed the said superintendent, Mr. S. M. Nees, to employ another and an additional competent teacher for said grades taught in said room; that plaintiffs object to attend the fourth-ward school building, and ask

to be assigned to said second-ward school building; that about ten years ago a number of the colored people of the said city requested that their children be permitted to attend school at a certain designated building in said city, to wit, the fourth-ward school building, as a matter of convenience, and that certain designated rooms in said building be assigned for their use, which request was granted by the school board, as far as the grades, to wit, the first and second primary, were concerned, but that said Jordan Knox did not join in said request; that in the fall of 1887, the majority of the colored people of said city, and also this said plaintiff, Jordan Knox, petitioned the board of education of said city to employ one Mr. E. M. Wood, a colored man, to teach said grades taught at said room in said fourth-ward school building aforesaid, which said petition was granted by said board, and said Wood was employed; that neither the said plaintiffs nor their said father, Jordan Knox, at any time made any objection to the order of said board of education to said board as aforesaid, but that at a regular meeting of the board in July, 1890, said Jordan Knox appeared and informed the said board that he desired his children to go to the second-ward school building."

The opinion herein was filed on January 10, 1891.

*W. A. Price,* and *A. M. Thomas,* for plaintiffs.

*W. E. Zeigler,* for defendants.

The opinion of the court was delivered by

HORTON, C. J.: The question presented in this case is, whether the facts agreed to bring it within the decision of *Board of Education v. Tinnon,* 26 Kas. 1. The city of Independence, like the city of Ottawa, is a city of the second class, and our attention has not been called to any section of the statute changing the control and regulation of the public schools of cities of this class since the affirmance of the judgment in the Tinnon case. The agreed statement of facts shows that Bertha Knox and Lilly Knox, who are colored children, and respectively eight and ten years of age, reside in the second ward of the city of Independence, 130 yards from the second-ward public school building, but are compelled to attend the fourth-ward school, 2,300 yards from

their home; in attending school in the fourth ward, they are required to pass near the second-ward school building. Bertha Knox belongs to the second primary grade, and Lilly Knox to the first primary grade.

At the time these children demanded admission to the second-ward school, neither the second primary room nor the first primary room was filled. There was room for the plaintiffs. No white children belonging to the same grade that plaintiffs do, living in the second ward, are required by the board of education or the superintendent of the public schools to attend the fourth-ward school building, or to go to school outside of the second ward; but all of the colored children of the city, who belong to the primary and intermediate grades, are required by the board of education to attend school in the fourth ward, taught by Mrs. Clara McCord. The grammar school and high school of the city are open to both the white and the colored children, whenever they are sufficiently advanced. These facts are sufficient to show that plaintiffs are excluded on account of their color or race from the public school of the second ward, where white children of the same age and grade are permitted to attend. The case of *Board of Education v. Tinnon,* supra, therefore applies. The plaintiffs attended the fourth-ward school, taught by Mrs. Clara McCord, not from choice of themselves, or their parents, but under compulsion of the board of education.

The boards of education of cities of the second class have no more right to have separate schools for white and colored children of the first and second primary grades, than they have to establish separate grammar and high schools for white and colored children. In Independence, the grammar and high schools are free to all, white and colored alike, but not so with the schools of the first and second primary grades. The plaintiffs are therefore entitled to the writ demanded.

It was said in the Tinnon case: "That unless the legislature has clearly conferred power upon the school boards to establish separate schools for the education of white and colored

children, no such power has been conferred. Under a statute which reads, 'In each sub-district there shall be taught one or more schools for the education of youth between the ages of five and twenty-one years,' the supreme court of Iowa held that the school board could not establish separate schools for the education of white and colored children, and could not exclude colored children from attending schools established for the white children alone."

It was further said in that case that—

"The legislature of this state has not given, or attempted to give, to the boards of education of cities of the second class, the power to establish separate schools for the education of white and colored children, and to exclude from the schools established for white children all colored children, for no other reason than that they are colored children. . . . If the board has the power, because of race, to establish separate schools for children of African descent, then the board has the power to establish separate schools for persons of Irish descent or German descent; and if it has the power, because of color, to establish separate schools for black children, then it has the power to establish separate schools for red-headed children and blondes. We do not think that the board has any such power. We have conceded, for the purpose of this case, that the legislature has the authority to confer such power upon school boards; but in our opinion the legislature has not exercised or attempted to exercise any such authority."

A peremptory writ will be granted as prayed for, and the plaintiffs will recover their costs.

All the Justices concurring.