Woolridge v. Board of Education.

No. 20,378.

W. E. WOOLRIDGE et al., *Plaintiffs,* v. THE BOARD OF EDUCATION OF THE CITY OF GALENA, and R. E. LONG, as City Superintendent, *Defendants.*

SYLLABUS BY THE COURT.

1. SCHOOLS—*Separate Schools for Colored Pupils—Findings of Commissioner Appointed to Take Testimony.* In an action for a writ of mandamus to compel the superintendent of city schools and the board of education of a city of the second class to admit colored pupils to the grades to which they were assigned at the opening of the term of school, to refrain from requiring such colored pupils to attend a separate school provided for pupils of the colored race, and to refrain from discriminating against such pupils on account of their race or color, it is proper for the commissioner appointed by the court for the purpose of taking testimony and making findings of fact and conclusions of law to make findings of fact showing everything that the superintendent of schools and the board of education did with reference to the schools.

2. SAME. It is not necessary for such a commissioner to make findings of fact on matters entirely outside the issues made by the pleadings.

3. SAME—*Separate Schools for Colored Pupils—Unlawful.* In a city of the second class neither the superintendent of schools nor the board of education has authority to separate pupils of the negro race from those of the white race on account of race or color.

Original proceeding in mandamus. Opinion filed June 10, 1916. Writ allowed.

*E. B. Morgan,* of Galena, for the plaintiffs.

*William F. Sapp,* and *A. S. Wilson,* both of Galena, for the defendants.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiffs, colored persons, seek to compel the defendants, the superintendent of schools and board of education of the city of Galena, to admit the plaintiffs' children and other pupils of the colored race to the grades to which they were assigned at the opening of the term of school beginning on the sixth day of September, 1915; to refrain from requiring the plaintiffs' children and other pupils of the colored race to attend a separate school provided for pupils of the colored race; and to refrain from discriminating against such pupils on account of their race or color.

The petition in substance alleges that the plaintiffs' children and other pupils of the colored race were separated from the white pupils attending the East Galena school, and were placed in a separate room in the school building and provided with a colored teacher; that this separation was made on account of the color of the plaintiffs' children and other colored pupils attending this school. The defendants denied making this separation on account of color or race. A commissioner was appointed to take the testimony in this case and to make findings of fact and conclusions of law. He made the following findings of fact and conclusions of law:

"1. That the defendant herein, The City of Galena, Kan., is a city of the second class duly organized under the laws of the state of Kansas, having a population of about 7000 people, and the defendant board of education of said city is a body corporate under the laws of the state of Kansas, relating to cities of the second class, and maintains a system of free graded common schools from the first to the sixth and a high school, to all of which the parents of pupils living within the said city are entitled to send their children without discrimination as to race or color,

and that the defendant, R. E. Long, was, during all the times herein mentioned, the duly elected, qualified and acting superintendent of said city schools.

"2. That G. W. Worthington, Wm. Campbell, V. E. Mitchell, W. L. Ricksecker, and F. H. Tryon are and were at all times herein mentioned the duly elected, acting and qualified members of said board of education, and that G. W. Worthington is the president of said board.

"3. That the said City of Galena did at all times mentioned in the pleadings herein maintain as a part of the public schools of said city what is described in the pleadings and testimony herein, 'The East Galena School.'

"4. That the public schools of said City of Galena opened on or about September 6, 1915, but prior to the opening thereof, and on or about September 4, 1915, the Board of Education required pupils who desired to enter said East Galena School to appear at said East Galena School building for the purpose of registering and being assigned to their respective grades, and on said day assignment was made of the various pupils presenting themselves based on their previous record and standing and without any reference to race or color.

"5. That on September 6, 1915, the pupils were admitted to said East Galena School, in the primary department and in grades 1, 2, 3, 4, 5 and 6, and without any discrimination whatever on account of race or color. That during the first week of said school colored children attended all the grades of said school in numbers about as follows:

"In primary department, 5; first grade, 3; second grade, 5; third grade, 3; fourth grade, 5; fifth grade, 4; and sixth grade, 5; making a total of 30 colored pupils attending said East Galena School.

"6. That the plaintiffs herein together with their children and others whom they represent, herein designated as colored children, belong to the African race, and are for the most part descendants of slaves; and were at all times mentioned herein, and now are residents of the City of Galena, Kan., entitled to all the privileges of the public schools of said City of Galena, without discrimination as to race or color.

"7. I also find that there was enrolled in the various wards of the graded schools about 150 more pupils for 1915 than for 1914, and that the enrollment at the East Galena School was about the same as in 1914, although one grade, the seventh, had been transferred to another building, but just what the comparative attendance was is not shown by the evidence.

"8. That on or about September 7, 1915, at a regular meeting of the Board of Education, defendant herein, it was voted, 'that on account of the crowded condition of the East Galena School building an additional teacher be employed.' It was also voted at the same meeting that Miss Mildred Grigsby be employed to teach at East Galena at a salary of $30 per month, and at the next regular meeting of the Board the minutes herein referred to were approved.

"9. In accordance with the plan suggested by finding No. 8 herein, Miss Grigsby, a colored woman, who was at the time working as a do-

mestic in the home of the president of the Board of Education and holder of a three years diploma from the Normal Training School of Pittsburg, Kan., under date of July 15, 1915, was employed as teacher for the colored children at a salary of $30 per month, and a room was fitted up on the second floor of said East Galena School building and she was assigned to it as teacher, her work commencing on Monday, September 13, 1915.

"10. On Monday morning, September 13, 1915, in accordance with the former determination of the Board of Education and with its full knowledge and consent, the defendant, R. E. Long, as superintendent of said schools, ordered and directed that all colored children in attendance at the East Galena School building be transferred to the room upstairs to be taught by Miss Grigsby, a colored teacher employed for that purpose.

"11. In accordance with said order all the colored children in said East Galena building, numbering 30, were so transferred to said Miss Grigsby's room, as follows: Primary department, 5; first grade, 3; second grade, 5; third grade, 3; fourth grade, 5; fifth grade, 4; sixth grade, 5. I also find that after the transfer of the colored children to Miss Grigsby, the rooms attended by white children still had more than 40 pupils in each room except one, and that the colored room had only 30.

"12. That thereafter several of the colored children so removed returned to the former rooms where they had previously attended school with the white children, but were not allowed to remain there, and were ordered and directed to return to Miss Grigsby's room, some under penalty of punishment if they refused. I further find that the said colored children had up to the time of their removal obeyed the rules of said school and were not under complaint on account of any misconduct on their part. I further find that after the colored children were refused admission to schools taught by white teachers and attended by white children, about half of them acting on advice of their parents refused to attend Miss Grigsby's school and were on the 17th day of December, 1915, out of school.

"13. No white children attended school in the room taught by Miss Grigsby.

"14. The white and colored children of said East Galena School continued to mingle together and all used the same playground during the intermissions without reference to race or color.

"15. At the time of the removal of the colored children to Miss Grigsby's room there were vacant and unoccupied seats in each of the rooms in said East Galena School building, and I further found on personal inspection that if all enrolled pupils had been present there would, on December 17, 1915, still have been vacant seats in each room, sufficient to have accommodated the colored children taken therefrom. (At the request of the defendants and with the consent of both parties, I visited the East Galena School and inspected the various rooms, and I find that the room to which said colored children were transferred was clean, sanitary and the equal for school purposes of the other rooms in said building, and while the furnishings of said room were a little

inferior to the other rooms, they were sufficient for the health, comfort and convenience of the pupils.)

"16. I further find that Miss Grigsby is a graduate of the Galena High School class of 1910, and a duly accredited graduate of the Manual Training School at Pittsburg, Kansas, and holder of a diploma from that institution under date of July 15, 1915, and that no complaint was offered among the complainants herein as to her qualifications as a teacher. I further find that she was required to conduct classes in all the studies taught in the primary, first, second, third, fourth, fifth. and sixth grades, while the white teachers in the same building were required to teach but one grade, except in one or two instances where grades were divided.

"17. I further find that there was no crowded condition in the East Galena schools that warranted the removal of the colored children from the rooms attended by white children and taught by white teachers, and placing them in a separate room by themselves. The president of the Board of Education testified (p. 99 of Record) as follows: 'Q. What class of pupils was the colored teacher employed to teach? A. The colored children.' And Mr. R. E. Long, the superintendent, testified, on page 129 of record, as follows: 'Q. As a matter of fact you divided the East Galena School as to color only, and you simply took them out of the rooms because of their color? A. Yes, sir, I took the colored children out of each of the rooms in the East Galena building and put them in a room by themselves.'

"18. I find that other rooms in the Galena schools had more pupils than are in the East Galena School, and their pupils were not divided or bunched into one room.

"19. I further find that colored children (only a few in number) who attended the Galena public schools in buildings other than the East Galena building, were not separated from the white children but continued to attend with white children taught by white teachers the same as before the 13th day of September, 1915.

"20. I find from all the evidence that the separation of the children of the plaintiffs and those whom the plaintiffs represent, from the white children, on September 13, 1915, and the placing of said children in Miss Grigsby's room where no white children attended and where all grades from primary to sixth grade, inclusive, were taught by said Miss Grigsby, was made on account of the race and color of said children so separated and placed.

"From the foregoing findings of fact I deduce the following conclusions of law:

"1. That the acts of the defendants herein, in separating the colored children from the white children and placing them in a room by themselves, taught by a colored teacher, where all the grades from primary to sixth grade were taught, was and is unwarranted by any of the laws of this state and a violation of the rights of the plaintiffs herein and of those whom they represent.

26—98 KAN.

"2. That a permanent writ of mandamus issue herein as prayed for by the plaintiffs."

1. The defendants ask that that portion of the ninth finding which reads, "Miss Grigsby, a colored woman who was at the time working as a domestic in the home of the president of the Board of Education," and all of the fifteenth, sixteenth, seventeenth, eighteenth and twentieth findings, be stricken out. They argue that the commissioner misconceived his duties, that he considered it his duty and right to invade the province of the school authorities and determine what was the proper manner to run the schools of Galena; and argue further that it was the duty and province of the school superintendent and of the board of education to determine this matter, and that it was not within the function of the commissioner to control the discretion of the superintendent and the board of education, or to suggest to them how they should run the schools.

In order for the commissioner and for this court to determine whether or not the pupils of the East Galena school had been separated on account of race or color it was necessary for the commissioner to know, and it is necessary for this court to know, everything that the superintendent of schools and the board of education did with reference to this school. The findings of which complaint is made show these things. It was proper for the commissioner to hear evidence on these questions and for him to make findings concerning them. The fact that the teacher employed for the colored children had been, prior to her employment, working as a domestic in the home of the president of the board of education is immaterial. It neither helps nor harms either side of this controversy and may be properly disregarded at this time.

2. The defendants requested that the commissioner make the following additional findings of fact:

"1. That at the time the colored children were placed in Miss Grigsby's room by the school superintendent with the approval of the school board, there was in the opinion of the superintendent a congested condition in the other rooms; that is to say, there were more scholars in the other rooms than the teacher could properly care for in the opinion of the superintendent and the school board.

"2. That in the opinion of the school superintendent, by reason of a fewer number of scholars in Miss Grigsby's room she could teach the first six grades as advantageously to the pupils as the teachers in the

other rooms who had fewer grades to teach, by reason of her having a less number of pupils than the teachers in the other rooms."

The commissioner refused to make these findings for the reason that in his judgment the findings requested were not within the issues made by the pleadings; that there was no allegation in the petition challenging the sufficiency of the school taught by Miss Grigsby; that the charge, in substance, was that the white and colored children were separated; that this charge was denied; that there was no plea of justification; and that the issues on the trial were on the one question of fact raised by the pleadings: Were the white and colored children separated? An examination of the pleadings discloses that the reasons given by the commissioner for his refusal to make these findings were correct. The superintendent of schools and board of education did not undertake to justify or excuse the separation of the pupils along the line of color, but denied doing it.

3. The authority of boards of education to separate colored pupils from white ones in schools under their control is settled in this state. They do not have such authority unless it is expressly given by statute. (*Board of Education v. Tinnon*, 26 Kan. 1; *Knox v. Board of Education*, 45 Kan. 152, 25 Pac. 616; *Reynolds v. Board of Education*, 66 Kan. 672, 673, 72 Pac. 274; *Cartwright v. Board of Education*, 73 Kan. 32, 84 Pac. 382; *Rowles v. Board of Education*, 76 Kan. 361, 91 Pac. 88.) The findings of the commissioner show that the defendants separated the plaintiffs' children and other colored pupils attending the East Galena school from the white children attending the same school on account of their race and color. This was without authority of law.

A peremptory writ of mandamus will issue as prayed for.