No. 25,305.

CELIA THURMAN-WATTS, *Plaintiff*, v. THE BOARD OF EDUCATION OF THE CITY OF COFFEYVILLE and A. I. DECKER, as Superintendent of Public Schools etc., *Defendants.*

SYLLABUS BY THE COURT.

1. MANDAMUS—*Cities of First Class—Authority of School Officers to Separate White and Colored Children.* In a city of the first class neither the superintendent of schools nor the board of education has authority to separate pupils of the negro race from those of the white race on account of race or color unless so authorized by statute.

2. HIGH SCHOOLS—*Interpretation of Statutes—Ninth Grade—Is a High-school Grade.* Under the law and the educational system of this state, the ninth grade is a high-school grade, even in cities ·which maintain junior high schools, under the plan of six years elementary work, three years intermediate work, and three years senior-high-school work.

3. SAME—*Discrimination on Account of Color of Pupils is Forbidden by Statute.* Discrimination on account of color is forbidden by statute in all high schools of this state, except the high schools of a single city.

Original proceeding in mandamus. Opinion filed January 25, 1924. Writ allowed.

*Elisha Scott,* and *R. M. Vandyne,* both of Topeka, for the plaintiff.
*A. R. Lamb,* and *Clement A. Reed,* both of Coffeyville, for the defendants.

The opinion of the court was delivered by

HOPKINS, J.: This is an original proceeding in mandamus brought to compel the board of education of the city of Coffeyville to admit to the Roosevelt junior high school of that city, a daughter of the plaintiff who has completed the eighth grade and is ready to enter the ninth grade or high school. Plaintiff is a resident taxpayer of the city of Coffeyville. She and her daughter are colored. Her daughter is sixteen years of age.

The controversy turns largely on the question whether or not the ninth grade is a part of the high school. Coffeyville is a city of the first class. If the grade to which plaintiff's daughter is entitled to be enrolled is a part of the high school the defendants have no authority to refuse her admission on the ground that she is colored. The powers and duties of the school board are derived exclusively from the statutes. The school board has no greater power than is conferred upon it by the statutes. Neither the superintendent of schools nor the boards of education have authority to separate white and colored pupils unless that power is expressly given by statute. (*Woolridge v. Board of Education,* 98 Kan. 397, 403.)

In *Knox v. Board of Education,* 45 Kan. 152, it was said:

"Until the legislature clearly confers power upon boards of education of cities of the second class to establish separate schools for the education of white and colored children no such power exists." (Syl. ¶ 1.)

The rule there expressed likewise applies to cities of the first class. (See, also, *Rowles v. Board of Education,* 76 Kan. 361, 91 Pac. 88; *Reynolds v. Board of Education,* 66 Kan. 672, 72 Pac. 274; *Cartwright v. Board of Education,* 73 Kan. 32, 34, 84 Pac. 382.)

A pertinent section of the statute reads:

"The board of education shall have power to elect their own officers, make all necessary rules for the government of the schools of such city under its charge and control and of the board, subject to the provisions of this act

and the laws of this state; to organize and maintain separate schools for the education of white and colored children, including the high schools in Kansas City, Kan.; no discrimination on account of color shall be made in high schools, except as provided herein; to exercise the sole control over the public schools and school property of such city; and shall have the power to establish a high school or high schools in connection with manual training and instruction or otherwise, and to maintain the same as a part of the public-school system." (R. S. 72-1724.)

Methods of education and courses of study have been and are still undergoing a transition which has resulted in great confusion so far as classification of grades is concerned. Courses originally taught in high schools are being taught in the elementary grades, while courses taught in the elementary grades are being extended into the high schools. In recent years the junior high school has come into vogue. It is a school organized between the elementary school and the senior high school, sometimes called the intermediate school. It usually includes the seventh, eighth and ninth years, though sometimes only the seventh and eighth. It is departmentalized and pupils are promoted by subjects instead of by years or grades of work. Greater elasticity of the curriculum is sought. A manual issued by the state department of public instruction gives extensive information concerning the movement. A large number of the school systems of the state have departed, to some extent, at least, from what was originally known as the "8-4" plan of school organization—eight years in the elementary schools and four years in the high school. While the greater number of schools are still operating under that plan, other systems are being organized on what is termed the "6-2-4" plan—six years in the elementary grades, two years of intermediate and four years of high school. Another plan now gaining in popularity is what is known as the "6-3-3" plan —six years in the elementary grades, three years intermediate (which includes the junior high school) and three years of the senior high school. Coffeyville has adopted the "6-3-3" plan. Conforming to the general transition, the state board of education has authorized certain courses of study for junior high schools. Also the state school book commission has approved certain texts for seventh and eighth grades which, under the new plan, are part of the junior high school.

The transition in educational methods in Kansas is not different from that in other states. A comprehensive volume issued under the direction of the superintendent of public instruction of the state

of Ohio, entitled "Ohio High School Standards," referring to the junior high school, states:

"Since the 8-4 organization still characterizes the majority of schools, that type is taken as basic in the discussions of this manual. At the same time there is no lack of awareness of the fact that many school systems have extended the period of secondary education downward to include the 7th and 8th grades, organizing on a 6-6 or more usually a 6-3-3 basis. This the department regards as a distinctly progressive step; it urges upon many of the smaller schools the possibilities that could be realized through a similar reorganization on a modest scale."

Notwithstanding the adoption of the junior-high-school method of organization in many of the schools of this and other states, the official reports filed with the state superintendent of public instruction conform to and furnish data under the standard four-year high-school plan. The official biennial report of the state superintendent of public instruction to the governor is based upon the standard four-year high school. The biennial report of the state superintendent of public instruction for the years ending June 30, 1921, and June 30, 1922, shows the city of Coffeyville operating under a system of eight grades in the elementary school and four grades in the high school. The same method was followed for the school year ending June 30, 1923.

A synopsis of courses of study for high schools of the state, issued by Hon. Jess W. Miley, state superintendent of public instruction, states:

"The high-school course of study is arranged so as to provide for four years of work following the completion of the elementary courses prepared for the eight grades in graded schools."

The so-called junior high school has received no more than mere mention by the legislature. (R. S. 72-102, 72-1335, 72-3510, 72-4101). On the other hand the four-year high school is substantially interwoven into the fabric of the public-school system of this state. County high schools (72-2611) which have been superseded by community high schools (72-2501) provide three courses of instruction each requiring four years' study for completion. Four-year accredited high schools are referred to in the statute (72-2705). The "Barnes law" contained this provision: "At least two courses of instruction shall be provided, each requiring four years' work, etc." (72-3015). Chapter 314 of the Laws of 1915, as amended by chapter 192 of the Laws of 1923, section 72-3801, refers to certain high schools with a four-year course accredited by the state board of

education. Chapter 283 of the Laws of 1917 provided for the extension of the high-school course of study by establishing a two-year course in advance of that described for accredited high schools by the state board of education (72-3301).

Giving force to the language of existing statutes, we cannot say that the term "high school" is so indefinite that boards of education may so restrict its meaning as to determine that one of its four years—one quarter of the whole—may be separated therefrom and made a part of the elementary school. "Words and phrases shall be construed according to the context and approved usage of the language." (R. S. 77-201; *The State, ex rel., v. Innes,* 89 Kan. 168, 174, 130 Pac. 677.)

A. I. Decker, superintendent of the Coffeyville public schools, among other things, testified:

"Q. Now, Mr. Decker, I will ask you if you do not know positively that the ninth grade is, under our law, designated and considered a high-school grade? A. The judgment of authorities with whom I have talked said it would have to be decided as to when this elementary, intermediate and high-school work were not ninth grade, or whether the ninth grade would be intermediate or high-school grade. That is a question for the legislature and the courts to decide. . . . Twelve years ago we had a division of the eight and four.

"Q. What do you mean, eight and four? A. I mean eight grades and four grades.

"Q. Then the ninth grade was the high-school grade? A. Yes, of course, that is what they were, but we did not call it a high-school grade, we called it elementary. . . .

"Q. The first eight grades are common school? A. Yes, sir. . . .

"Q. When you leave the eight grades you go to the ninth? A. I will simply say this:. the first eight grades are common elementary schools. The grades 9, 10, 11 and 12 are high school.

"Q. Then the ninth is the first year in the high school? A. Yes, sir."

A New Hampshire statute describes a high school as being one for at least one four-year course, properly equipped and teaching such subjects as are required for admission to college, technical school and normal school. (*New Hampton Institution v. Northwood School Dist.,* 74 N. H. 412. See, also, *State, ex rel. Sheibley, v. School District,* 31 Neb. 552; 35 Cyc. 812.)

The junior high school of Coffeyville may be an intermediate school between the elementary grades and the senior high school. It is clear, however, that the ninth grade, even though housed with the seventh and eighth grades in a building termed "junior high

Thurman-Watts v. Board of Education.

school," is still part and parcel of the high school proper, and is generally so regarded. It is equally clear that, under existing statutes, the defendants may not separate white and colored pupils in the high school because of their color.

Coffeyville has three junior high schools which include the ninth grade: the Roosevelt, the Washington and the Cleveland. The defendants have designated the Roosevelt building for white pupils, the Cleveland building for colored pupils, while both white and colored attend at the Washington building. While all three are modern school buildings, the Roosevelt is the newest and most up-to-date. It is contended by the defendants that if plaintiff is permitted to select the Roosevelt building for her daughter all of the colored pupils of Coffeyville may decide to attend school at the Roosevelt building and that facilities for all are not afforded there. Perchance all the white pupils might decide to attend there. The answer to this contention is that the defendants have charge and control of the schools of Coffeyville and have power to make all necessary reasonable rules for the government thereof. (R. S. 72-1724). A limitation upon such power is that defendants may not separate students of the ninth grade or high school on account of their color. The defendants are empowered under the law to make necessary and reasonable regulations for attendance of pupils at the various buildings in order that there may be no congestion at any one, by zoning or districting the city, or by some other reasonable method, providing always that no discrimination be shown on account of race or color.

It is contended that no sufficient demand was made upon the defendants as a prerequisite to the institution of this proceeding. The attitude of the defendants was such that, in our opinion, no specific demand upon the defendants was necessary. Where the proceeding is instituted to compel the performance of a public duty no formal demand upon the defendants is necessary where their course and conduct manifest a settled purpose not to perform the duty, and where it clearly appears that a formal demand would be useless and unavailing. (*C. K. & W. Rld. Co. v. Comm'rs of Chase Co.,* 49 Kan. 399, 30 Pac. 456; *Ackerson v. Zinc Co.,* 96 Kan. 781, 153 Pac. 530; 26 Cyc. 182.)

Other questions raised in the briefs need not be discussed.

The peremptory writ will issue.

No. 25,305.

OPINION DENYING A REHEARING.

(*Ante,* p. 328, filed February 9, 1924.)

The opinion of the court was delivered by

HOPKINS, J: A motion for rehearing concedes that neither error of law nor of fact is contained in the opinion and judgment. If the defendants will set about a reassignment of the ninth-grade pupils by zoning or districting the city, or by some other reasonable method as indicated in the opinion, and will do so in good faith and without regard to color, the difficulties of administration of the school affairs of Coffeyville will largely disappear.

A rehearing is denied and the peremptory writ will issue.