No. 33,151

D. E. KERN, *Plaintiff,* v. THE CITY COMMISSIONERS OF THE CITY OF NEWTON (MCCULLEY ASHLOCK, Mayor, CLAY HAYMAN, L. J. NELSON, and KNOWLAND K. BRODE, City Manager, and HAROLD HUNT), *Defendants.*

(77 P. 2d 954)

Opinion filed April 9, 1938.

*Elisha Scott,* of Topeka, for the plaintiff.

*Fred Ice,* city attorney, *Ezra Branine* and *Alden E. Branine,* both of Newton, for the defendants.

The opinion of the court was delivered by

DAWSON, C. J.: The plaintiff, who alleges that he is a private citizen of African descent and color, invokes the original jurisdiction of this court in mandamus to compel the governing officials of the city of Newton, and one Harold Hunt, to admit him to the privileges of a swimming pool constructed with funds procured by a sale of municipal bonds voted by the electors of Newton in 1934.

The application for the writ sufficiently alleges that the bonds so voted are a charge upon all the taxable property of the city, and that plaintiff is a taxpayer; that when the swimming pool was completed and opened this plaintiff provided himself with a bathing suit for the purpose of enjoying the privileges of the swimming pool; but in the meantime the city government leased the swimming pool to one Harold Hunt; and that the latter denied to plaintiff the right and privilege of using the pool because of his race and color.

The petitioner further alleges that no arrangements have been made by defendants to furnish swimming facilities or privileges for plaintiff, and that neither he nor other citizens of African descent and color are admitted to the municipal swimming pool at any time. The petition continues—

"Plaintiff alleges that the action on the part of all the defendants and each of them was malicious, capricious, arbitrary and in violation of the civil rights law of the state of Kansas made and provided in such cases and also in direct violation of the federal and state constitutions in such cases made and provided. And, that he and all other people of African descent or color are discriminated against because of their race, and that the said defendants and each of them have arbitrarily and intentionally failed and refused to make any provision for their entertainment, amusement or enjoyment of said municipal swimming pool in the city of Newton, Kan., notwithstanding the fact that the plaintiff and people of his group pay their just proportion of the taxes, which will be applied to the liquidation of the indebtedness incurred by the defendant."

The petition concludes with a prayer for an alternative writ commanding defendants to admit plaintiff and other citizens of Newton of African descent and color to the privileges of the swimming pool, or to show cause why plaintiff and others similarly situated should be denied such privileges.

An alternative writ issued, which counsel for defendants moved to quash on two grounds:

(1) That plaintiff had no legal capacity to maintain the action; and

(2) That the application for the writ did not state sufficient facts to constitute a cause of action.

When the motion to quash was presented, it developed in the oral argument that the possibility of an amicable adjustment of the matters complained of had not been fully explored by counsel for the litigants; and consideration of the cause was deferred until that matter had been considerately examined. Now, however, we are advised that an amicable settlement of the matters alleged in the application

for the writ cannot be effected, and each party to the litigation invokes the judgment on the legal issues raised by the pleadings now before the court.

Is this sort of action maintainable by a private citizen having no interest in the matters alleged which differ in any respect from the public in general—particularly those of African color and descent who are citizens of Newton?

Approaching the question from another angle, and assuming the matters set out in the application for the writ to be true and well-pleaded, would not the alleged arbitrary or illegal action of the governing body of Newton be subject to correction or redress in an action brought by the state on the relation of the attorney general or county attorney? It would seem so. And if the alleged official delinquency or assumption of unauthorized authority is subject to challenge or correction by any one of the state's authorized prosecuting attorneys, can this plaintiff, a private citizen, prosecute this action, when he has no interest in the subject matter in anywise different from the group to which he belongs?

Counsel for defendants cite many decisions of this court over a period of more than 60 years which, they argue, require a negative answer to this question.

In *Craft v. Jackson Co.*, 5 Kan. 518, a taxpayer sought to maintain an action against a board of county commissioners to enjoin them from allowing and paying an allegedly illegal claim against the county and to enjoin the county clerk from drawing a warrant therefor. A temporary injunction was first granted and later dissolved by the district court, and on appeal that ruling was affirmed. In its opinion this court said:

"It is well known that the general rule is, that for wrongs against the public, whether actually committed or only apprehended, the remedy, whether civil or criminal, is by a prosecution instituted by the state in its political character, or by some officer authorized by law to act in its behalf, or by some of those local agencies created by the state for the management of such of the local affairs of the community as may be entrusted to them by law. The individual citizen does not in his own name interfere in behalf of the interests of society, but society acts through and by its properly constituted agencies. The law, as a general principle, has not deemed it proper that offenses or grievances of a public character should be investigated at the suit of a private individual, nor that the officers, to whom important trusts have been confided, should be held liable for their act to any one. When those acts affect every one alike such officers are as amenable as private citizens for any abuse of their authority. If the injury is one that peculiarly affects a person, he has his right

of action; if it affects the whole community alike, their remedy is by proceedings by the state through its appointed agencies." (p. 521.)

Further, in the same opinion, the court continued thus:

"In *Putnam v. Valentine* [5 Ohio, 189] the court refused to sustain an injunction obtained by a supervisor of highways to restrain the commission of great and irreparable injuries to a highway, saying: 'Suits to prevent the infraction of rights purely public are generally commenced and conducted in the name of the state, or the officer entrusted with the conduct of the public suits,' although it is not certain from the opinion that the case was decided upon this principle, but more likely on the want of power in the supervisor to conduct suits of that character in his official capacity. . . . An injunction is likened to a mandamus, without observing that in the latter class of cases the proceedings are in the name of the state, and by the relator in certain cases, by express authority of law, a fair illustration of what we have endeavored to make appear in this opinion, that the private citizen as such cannot sue in his own name for public injuries where his rights and interests are the same as those of every other member of the community." (p. 524.)

In *Bobbett v. State, ex rel. Dresher,* 10 Kan. 9, six private citizens of the town of Lindsay, in Ottawa county, made application to the district court for a writ of mandamus to compel the board of county commissioners to cause an election to be held for the relocation of the county seat. The district court held that the writ should issue, but this court held otherwise. Our syllabus reads:

"Mandamus will not lie at the instance of a private citizen to compel the performance of a purely public duty.

"Such a suit must be brought in the name of the state, and the county attorney and the attorney general are the officers authorized to use the name of the state in legal proceedings to enforce the performance of public duties.

"Where a private citizen sues out a mandamus he must show an interest specific and peculiar in himself, and not one that he shares with the community in general."

In the opinion Mr. Justice Brewer said:

"The question is therefore narrowed down to this: Can a private citizen by mandamus compel the performance of a public duty? To allow any citizen to litigate with public officers the propriety of their acts, exposes them to constant litigation. If one may, so may another. If one act may be litigated, so may all; and so the time, attention and thought of the officer diverted from the duties of his office to the defense of harrassing suits. This topic is pursued at length in the case of *Craft v. The Comm'rs of Jackson County,* just cited, and needs no further discussion here." (p. 14.)

In *Miller v. Town of Palermo,* 12 Kan. 14, five private citizens who were residents and taxpayers of certain lands within the limits of the so-called town of Palermo brought an action in the nature of quo warranto against certain defendants who assumed to act as

the official board of trustees of the town, alleging that Palermo was not a municipal corporation nor were the defendants the officers thereof. Plaintiffs prayed judgment of ouster. The defendants interposed a demurrer on three grounds:

" '1st, That said plaintiffs have not legal capacity to sue in this action, it appearing from said petition that in said action the county attorney of said county, or the attorney general of the state of Kansas are the only persons authorized to sue.

" '2d, That there is a defect of parties plaintiff, in this, that said action should have been brought by the county attorney of said county or the attorney general of the state of Kansas.

" '3d, The petition of the said plaintiffs does not state facts sufficient to constitute a cause of action.' " (p. 15.)

This demurrer was sustained, and on appeal this court said:

"Private individuals, who have no interest other than as citizens, residents and taxpayers of a municipal corporation, cannot maintain an action of quo warranto against such corporation.

"If the injury is one that particularly affects a person, he has a right to the action. If it affects the whole community alike, their remedy is by proceedings by the state, through its appointed agencies." (Syl.)

To the same effect was the interesting case of *Adkins v. Doolen*, 23 Kan. 659.

In *Nixon v. School District*, 32 Kan. 510, 4 Pac. 1017, a private citizen and taxpayer brought suit to restrain a district school board from erecting a schoolhouse, on various alleged grounds of illegality. He set forth his interest in the subject matter thus:

" 'Plaintiff further says that he is a citizen and taxpayer of said school district No. 92, in said county and state; that the question involved in this case is one of common or general interest to many persons; that the parties are very numerous, and it is impracticable to bring them all before the court, and he brings this action for the benefit of all.' " (p. 511.)

This court held he could not maintain the action, saying—

"The plaintiff does not allege that he has any interest in the subject matter of the action special or peculiar to himself, nor any interest therein except such as results from his being a citizen and taxpayer. He alleges 'that the question involved in this case is one of common or general interest to many persons; that the parties are very numerous, and it is impracticable to bring them all before the court,' intending to bring himself within the provisions of § 38 of the civil code; but he does not allege or show that any of the other parties have any more interest in the subject matter of the action than he has, nor indeed as much. They may not even be citizens or taxpayers. But supposing that they are, they have no more right to bring the action than he has. If the school district or its officers are doing anything wrong, it is for

some person who has some special interest in the matter, or some public officer, to bring the action." (p. 512.)

We have taken space to cite and quote from these early cases to show that it became the settled policy of this state many years ago that to secure redress for any official inaction or illegal action, or official delinquency, appropriate proceedings should be begun, and ordinarily can only be begun, by the county attorney or attorney general.

The later cases of this court are to the same effect. In *Home Riverside Coal Mines Co. v. McAuliffe,* 126 Kan. 347, 267 Pac. 996, when a taxpayer sought to enjoin the governing officials of Leavenworth from entering into a contract with an electric power company for the purchase of electricity to operate the municipal water plant, this court held that plaintiff could not maintain the action. In the opinion it was said:

"Early in the history of this state it was determined that '. . . for wrongs against the public, whether actually committed or only apprehended, the remedy, whether civil or criminal, is by a prosecution instituted by the state in its political character. . . .' (*Craft v. Jackson Co.,* 5 Kan. 518, 521; and see *Clark v. George,* 118 Kan. 667, 669, 236 Pac. 543.) This principle applies not only in injunction, but in mandamus (*Bobbett v. State, ex rel. Dresher,* 10 Kan. 9; *Collingwood v. Schmidt,* 125 Kan. 81, 262 Pac. 556) and other forms of action, many examples of which are found in our reports." (p. 348.)

To the same effect were *Albach v. Fraternal Aid Union,* 100 Kan. 511, 164 Pac. 1065; *Weigand v. City of Wichita,* 111 Kan. 455, 207 Pac. 651; *Clark v. George,* 118 Kan. 667, 236 Pac. 643; *Collingwood v. Schmidt,* 125 Kan. 81, 262 Pac. 556; *Rodenbeck v. Darby,* 139 Kan. 759, 32 P. 2d 306; *Robertson v. Kansas City,* 143 Kan. 726, 56 P. 2d 1032.

It is quite true, however, that alongside of the foregoing decisions, our reports are replete with precedents cited by counsel for plaintiff which recognize the right of an individual plaintiff to invoke injunction, mandamus or quo warranto to secure redress against public officials for denial of his rights where his grievance is peculiar to himself or different in degree from that of the general public, or where no other adequate specific remedy exists. Thus in *Board of Education v. Tinnon,* 26 Kan. 1, this court affirmed a judgment of the district court which granted a writ of mandamus requiring the board of education of the city of Ottawa (a city of the second class) to admit the plaintiff, a colored boy of school age, to one of the city

schools set apart for white pupils, notwithstanding adequate separate schoolrooms and facilities had been set apart for the exclusive use of colored pupils.

In *Knox v. Board of Education*, 45 Kan. 152, 25 Pac. 616, mandamus was similarly invoked with success to compel the school board of the city of Independence (a city of the second class) to admit two colored pupils to one of its schools set apart for white pupils, although adequate facilities for the separate instruction of colored pupils had been provided.

In *Reynolds v. Board of Education*, 66 Kan. 672, 72 Pac. 274, mandamus was sought to compel the board of education of the city of Topeka to admit a colored pupil to a school maintained for white children. Mandamus was denied, because a special statute authorized the board of education of the city of Topeka to maintain separate schools for white and colored children except in the high school.

In *Williams v. Parsons*, 79 Kan. 202, 99 Pac. 216, mandamus was granted at the behest of a private colored citizen of Parsons to compel the board of education to provide adequate and convenient school facilities for his children, although the board of education (Parsons being a city of the first class) was authorized to segregate the white and colored school children of that city.

The case of *Cartwright v. Board of Education*, 73 Kan. 32, 84 Pac. 382, a Coffeyville case, was governed by the rule announced in the early Tinnon and Knox cases, *supra*.

In *Rowles v. Board of Education*, 76 Kan. 361, 91 Pac. 88, this court held that although Wichita was a city of the first class, its educational system was governed by a special statute which seemed to forbid, and certainly did not expressly sanction, the maintenance of separate schools for white and colored children in Wichita; consequently the case was governed by the rule of the Tinnon and Knox cases; and we also held that the district court erred in denying mandamus to require the school board to admit plaintiff's daughter to the ward school where, but for her color, she would have been admitted without question.

*Woolridge v. Board of Education*, 98 Kan. 397, 157 Pac. 1184, was another mandamus case against the school board of Galena, a city of the second class, where it was again held that the defendant school board had no authority to separate colored pupils from white pupils in the schools under its control—"unless it is expressly given by statute."

*Thurman-Watts v. Board of Education*, 115 Kan. 328, 222 Pac. 123, another Coffeyville school case, was to the same general effect—there could be no discrimination on account of color without statutory sanction therefor.

In *Wright v. Board of Education*, 129 Kan. 852, 284 Pac. 363, injunction to prevent the school board of a city of the first class from transferring a colored pupil from a school for white pupils to another assigned for colored children was denied—but there, again, a statute (R. S. 72-1724) sanctioned the segregation.

In none of the cases cited by plaintiff was the legal question raised as to the petitioner's right to sue for mandamus or other extraordinary redress; but it is, of course, well settled in this jurisdiction that if plaintiff can show that he has some interest peculiar to himself, and that he is not merely intruding into the role of public prosecutor, he can maintain the action—in certain instances by virtue of some express statute, but elsewhere on broad legal or equitable considerations. Thus in *Boylan v. Warren*, 39 Kan. 301, 18 Pac. 174, mandamus was invoked by a private citizen to compel the clerk of the district court to permit plaintiff to examine the records in the clerk's office for the purpose of procuring information to which he was entitled. It was the official duty of the clerk to render such service to the public; but plaintiff, owing to his vocation as an abstracter of titles, had a peculiar interest in having this public duty performed, and thus had an interest measurably different from the public in general, so his right to maintain mandamus was upheld.

In *Young v. Regents of State University*, 87 Kan. 239, 124 Pac. 150, the action arose following the enactment of a statute to establish a State School of Mines and Metallurgy at the town of Weir, in Cherokee county. The proposed school was to be under the control of the regents of the state university, but the board of regents showed no inclination to establish it. Plaintiff, a citizen of Weir, owner of a home there and the head of a family, brought mandamus proceedings to compel the board of regents to establish the school. He alleged a peculiar interest in having the regents perform their official duty by alleging his desire and intention—

"To attend the school and educate himself in the branches of learning required to be taught there; that he is eligible to enter the school and receive the instruction which it is intended to afford, having already taken much of the courses provided for; that he has a son whom he desires to educate at the school and who is eligible to enter it; and that because of the failure of the board to establish the school the plaintiff and his son are deprived of the benefit of the act." (p. 242.)

This court held that plaintiff could maintain the action, and judgment was given accordingly. It is to be noted, however, that in *Gormley v. School Board*, 110 Kan. 600, 204 Pac. 741, where this court dismissed a proceeding in mandamus to compel a rural high-school board to call an election to vote on the disorganization of the district on the ground that the plaintiffs as private citizens had no such peculiar interest in the performance of the school board's duty as to authorize them to maintain the action, Mr. Chief Justice Johnston said that *Young v. Regents of State University*, supra, was recognized as a border-line case. Continuing, in the same opinion, it was said:

"Of course, they [the plaintiffs] are interested as taxpayers in the disorganization of the district, and the levies that may be made for the erection of a school building, and the maintenance of a school, but this is an interest common to all the taxpayers of the district, and this under the authorities cited gives them no right to maintain mandamus or assume the functions of the county attorney or attorney general. Private citizens having no special interest may not employ mandamus to compel officers to perform what they may deem to be the duties of such officers." (p. 602.)

In *Titus v. Sherwood*, 81 Kan. 870, 106 Pac. 1070, mandamus was invoked by the presidents of five local miners' unions to compel the president of the state association of miners to issue a call to convene delegates in a meeting of the state association for the purpose of electing a secretary of that association. The legislature had created the official position of state mine inspector, prescribed his duties and given him a salary, and had also provided that whoever was chosen secretary of the state association of the miners' unions should be ex officio state mine inspector. The validity of the statute was not drawn in question, but it was held that the presidents of the five local unions did not have sufficient interest in the matters complained of to maintain mandamus proceedings, and the judgment of the district court, which had ruled to the contrary, was reversed.

In *Hawkins v. Gregory*, 138 Kan. 477, 26 P. 2d 247, an action was begun by a private citizen to compel the county clerk to extend on the tax rolls a levy ordered by an official board which on proper occasion had authority to impose such a tax levy. This court itself raised a question as to the authority of plaintiff to maintain the action and ordered that question briefed, following which it was held that plaintiff could not maintain the action. The pertinent paragraph of the syllabus reads:

"Under the rule announced in *Bobbett v. State, ex rel.*, 10 Kan. 9, that

mandamus will not lie at the instance of a private citizen to compel the performance of a purely public duty, an application for a writ of mandamus to require the county clerk to spread a tax levy on the tax rolls of a drainage district will be dismissed where the applicant for the writ is a private citizen having no interest peculiar to himself nor different from that of the generality of property owners on whom the tax was levied." (Syl. ¶ 1.)

In the opinion it was said:

"In the first place it should be obvious that the plaintiff, a private citizen, cannot maintain the action instituted by him in case No. 31,620. He has no special interest apart from the general run of citizens and property owners of the drainage district which would justify his assumption of the functions of a public prosecutor to compel the county clerk to extend this tax levy. As this court has many times observed, this state is adequately provided with officers to attend to matters of this sort, and even neglect of or inattention to such duties by public officials does not warrant their assumption by private litigants except where the statutes so provide." (p. 481.)

See, also, *McDonald v. Rhodes*, 140 Kan. 744, 42 P. 2d 46, where it was held that a state treasurer-elect had no greater right of access to the affairs of the state treasurer's office than any other private citizen, and that the incumbent in lawful possession of the office could not be compelled by mandamus to permit the officer-elect to make an audit of the office before his official bond had been given and approved.

In view of all these precedents from our own reports, what is the correct answer to defendants' contention that plaintiff has no right to invoke mandamus to redress his alleged grievance in being deprived of the privileges of the municipal swimming pool of the city of Newton? Has he stated any grievance redressable by mandamus which is peculiar to himself and not suffered by the public in general? The answer is not easy. The public in general is not deprived of the privileges of the swimming pool. According to the petition, however, it is alleged that all colored citizens of Newton are similarly deprived of the privileges of the swimming pool. Whether their number be many or few the pleadings do not show. However, the situation stated in the application for the writ would undoubtedly warrant the institution of some sort of action, mandamus, quo warranto, or injunction, by the public prosecutor; and we are not prepared to say that plaintiff can maintain this action on behalf of the group for which he pleads. But we think it clear that in the interests of justice and equity plaintiff is entitled to maintain the action in his own behalf. He is deprived of the privileges of the

swimming pool. He is a taxpayer, and as such he and his property are bound to pay the bonds issued to raise the money which built the swimming pool. He has as good a right to its privileges as any other citizen. Deprivation of the privileges of access to municipal recreation grounds established or maintained at the general taxpayers' expense, on account of race or color, is legally and traditionally offensive to the history of this state; and although this court has repeatedly upheld statutes which sanction reasonable segregation of the racial stocks of this state, white and colored, we have steadfastly held to our oft-repeated rule that the legislature alone can authorize such segregation, as in the many school cases cited above.

The court holds that the plaintiff can maintain the action.

The second point urged in defendant's motion to quash—that the application for the writ does not state facts sufficient to constitute a cause of action—should take less space for solution. There may be a troublesome question touching the joinder of the city officials and the lessee of the swimming pool in this mandamus proceeding. (*Rakestraw v. State Highway Comm.*, 143 Kan. 87, 53 P. 2d 482, and 5 J. B. K. 267-269.) The terms of the lease are not now before the court. Thus far, its validity is not in question. Ordinarily mandamus is only concerned with the performance of official duty; and of course, Hunt, the lessee, has no *official* duty in the premises. But he is not improperly impleaded because of his interest in the litigation (*Wolf River Drainage Dist. v. Nigus*, 133 Kan. 742, 744, 3 P. 2d 650, and citations), although eventually the absolute rights of plaintiff and the extent of Hunt's liability, if any, may have to be settled in a separate lawsuit. On this last point we venture no opinion; but see 5 R. C. L. 604, 605; 11 C. J. 810 *et seq.*

On the second point urged in the motion to quash, the court holds that the application for a writ states a cause of action.

It follows that the motion to quash cannot be sustained. Defendants are given thirty days to plead further, as they may be advised.

Defendants' motion to quash the alternative writ is overruled.