No. 37,427

HARVEY LEWIS WEBB and ALFONSO EUGENE WEBB, JR., Minors, by their parents and next friends, Alfonso Eugene Webb and Mary J. Webb; SHIRLEY ANN TURNER and NORBERT EDWARD TURNER, Minors, by their parents and next friends, Thelma Turner and Ernest Burrell Turner, Jr.; DELORES GAY; and PATRICIA BLACK, a Minor, by her parent and next friend, Thomas Black, *Plaintiffs*, v. SCHOOL DISTRICT No. 90 in JOHNSON COUNTY, Virgil Wisecup, V'rn Hoyt, James Wagner, Mabel Click, and Elwin Campbell, *Defendants*.

(206 P. 2d 1054)

Opinion filed June 11, 1949.

*Elisha Scott, Sr.,* of Topeka, and *Franklin H. Williams,* of New York City, N. Y., argued the cause, and *John J. Scott* and *Charles S. Scott,* both of Topeka, *Thurgood Marshall,* of New York City, N. Y., and *Carl R. Johnson,* of Kansas City, Mo., were with them on the briefs for the plaintiffs.

*W. C. Jones,* of Olathe, and *James Bradley,* of Merriam, argued the cause, and *John Anderson, Jr.,* county attorney of Johnson county, was with them on the briefs for the defendants.

The opinion of the court was delivered by

SMITH, J.: This is an original action in mandamus brought by a number of Negro pupils of School District No. 90 in Johnson county, and their parents as next friends, to compel the school board, the principal of South Park School in the district and the county superintendent of public instruction to require and permit these pupils and all others in the district similarly situated to attend school at the school building known as "South Park School." We issued an alternative writ and after defendants filed their answer we appointed a commissioner to hear evidence and make findings of fact and conclusions of law. Our commissioner made his report in due time. Plaintiffs attacked one conclusion of law. The defendants asked that the report be approved for final judgment on it. The cause was finally submitted on these motions. As submitted to us there is not much dispute about the facts.

We shall first refer to the allegations of the petition as they are set out in our commissioner's report.

The petition alleged that there was a grade school population of Negro pupils from the first to the eighth grade in the district. It then alleged the corporate existence of the district and the official status of the defendants; that it was organized as a common grade school known as the South Park School and was governed by G. S. 1947 Supp., 72-302 *et seq.,* and G. S. 1947 Supp., 72-1107; that sev-

eral years ago the district unlawfully organized and established a separate grade school for the attendance of Negro children and forced them to attend that school, known as "Walker School"; that the plaintiffs had asked that they and other Negro children be admitted to the South Park Grade School; that the school board had refused to admit Negro children to that school and forced them to attend the unlawfully established separate school; that this school was inadequate, insufficient, out of date, dilapidated and not fit for a school; that plaintiffs had appeared at the annual school meeting and demanded that the segregation of the school children of that district be stopped and the Negro children be admitted to the one and only lawfully designated school; that the board had refused to admit them; that the division and classification of the school children were based entirely upon race and color and was illegal and arbitrary. The petition then alleged such conduct was a violation of constitutional rights of the plaintiffs and they had no adequate remedy at law and they had been compelled to employ counsel and to pay a reasonable attorney's fee, which they alleged was $1,250. The prayer was that this court order the school board to admit all the Negro school children of District No. 90 to the South Park Grade School, which was then designated exclusively for white children, and that an order be made requiring the defendants to pay plaintiffs a reasonable sum for attorney's fees.

The school district answered admitting their official status and that the school district maintained two elementary schools; that at the regular meeting of the board on May 17, 1948, a resolution was passed designating the pupils in the district within a certain area in the district that would attend South Park School and the pupils in a certain area within the district that would attend Walker School. The answer pleaded the notice of a special meeting, waiver of notice on the part of the board and the resolution of the directors of the school district whereby the Walker district was designated. The answer then pleaded that the resolution was passed because of pupil congestion and taking into consideration the facilities of the school buildings, the number of pupils that could be accommodated and without regard to racial discrimination or color. They also pleaded at the time the action was filed they had prepared plans for improving Walker School. For a further defense they pleaded that the defendants were not the real parties in interest and did not have the whole and entire beneficial interest in the subject matter

of the action. The prayer was that they be not required to do the things recommended and that the plaintiffs be denied a peremptory writ of mandamus.

The answer of the county superintendent was a general denial. The reply of plaintiffs to both answers was a general denial, coupled with the allegation that the allegations of certain paragraphs did not state facts sufficient to constitute a defense.

At the outset certain facts were admitted before the commissioner, that is, that District No. 90 was a common school district; that it had for many years maintained two school buildings, one known as "South Park Grade School" and the other known as "Walker Grade School"; the identity of the defendants; that the toilet facilities of Walker School were outside and those of the South Park Grade School were inside the building; that the South Park School building was a new one erected in 1947. For purposes of clarity, the situation can be handled as well by setting out our commissioner's findings of fact, conclusions of law and recommendations as any other. They are as follows:

"FINDINGS OF FACT

"1. School District No. 90, Johnson County, Kansas, has for generations maintained two separate school buildings. One known as the South Park Grade School and the other as Walker School.

"2. During all of said period of time the Negro school children attended the Walker School and the white school children attended the South Park School.

"3. Until 1947 the type of construction of the two buildings was comparable.

"4. The school district made available funds in 1947 and a new building was constructed on the site of the old South Park Grade School at a cost of approximately $90,000.00.

"5. No provision was made for a new school building to take the place of the Walker School and at the time of the filing of this action said building was in a bad state of repair. The school board did make some improvements prior to the commencement of the 1948 school term.

"6. Notwithstanding these repairs at the Walker School the two buildings are not comparable from any point of view and particularly as to sanitation and fire hazard—the Walker building being of frame and stucco construction while the South Park building is of approved semi-fire proof construction. The equipment in the South Park building, while all of it is not new, and the built-in facilities, including the lighting, makes for a modern educational program and is therefore superior to that found at the Walker School. The toilets at Walker School are on the outside of the building; at the South Park new building they are on the inside of the building and the equipment is of the latest design and in furtherance of sanitation.

"There is no Gym, as such, at either building, but there is a rather large auditorium in the new South Park building and none at the Walker building. There is a sliding or failing door between the rooms at the Walker building which may be opened for assembly purposes.

"The playground equipment would be comparable if the missing parts at Walker School were procured and installed on the frames now on the ground.

"7. There has been established a kindergarten at the South Park School and there is none at the Walker School.

"8. There has been installed a lunch service under the state and government program at the South Park School. There is none at the Walker School. The program was undertaken by the parents of the Negro students but was abandoned and no effort was made by anyone to revive it. In fact there is no place in the Walker building suitable and which could be made sanitary for such purpose. The basement is walled up with rock; it is on several floor levels and there is evidence of seepage of water. A sump pump has in in the past been installed, but at the date of inspection no pump was in place.

"9. There are two teachers in the Walker School and nine at the South Park School. The teachers at the South Park School are all white, the teachers at the Walker School are colored.

"10. At the Walker School the eight grades are taught in two rooms. At the South Park School each of the eight rooms has a teacher and there is also a part-time music teacher. There was no showing that music was taught at the Walker School.

"11. The textbooks and other teaching material and supplies are the same.

"12. The scholastic attainment, as shown by the achievement tests, is comparable.

"13. There was some evidence in an attempt to establish that one or both of the teachers at the Walker School were not qualified. Said teachers have been approved, on a temporary basis or otherwise, by the State Superintendent of Public Instruction and are therefore duly qualified. Therefore this contention is without merit.

"14. After the completion of the new South Park building the parents of the Negro children made demands upon the Principal and school board that the Negro children be permitted to attend school at the new building. On the ground that said Negro students were not in the assigned attendance area admittance was refused.

"15. By reason of these demands the school board did, at a special meeting held on May 15, 1948, adopt a resolution fixing the boundary of the attendance areas of the two schools. The metes and bounds of these attendance areas does not divide the district East and West or North and South, but meanders up streets and alleys, and by reason thereof all of the Negro students are placed in the Walker School attendance area. Under this allocation the white children walk past the Walker School. There may be white families in the Walker area and Negro families in the South Park area. The evidence on this point was not too definite.

"16. The designation of the school area for each of the two schools, as set out in the resolution, clearly establishes that the two areas were not designated on a territorial, school census, or any other reasonable basis and such action

taken by the officers of the school district was therefore arbitrary. Such designation does attain the result of segregating the Negro children in the Walker School whether such result was intentional on the part of the school officials or not.

"17. In the 1947-48 school term there were 222 pupils in the South Park School and 44 pupils in the Walker School. In the 1948-49 school term there are approximately 245 pupils in the South Park School and approximately the same number of pupils as in 1947-48 at the Walker School.

### "CONCLUSIONS OF LAW

"1. This action was properly brought and maintained by plaintiffs.

"2. A common school district, by appropriate action at the annual school meeting or at a special meeting called for such purpose, may legally establish, maintain and operate two separate school biuldings within the territorial limits of the district. In the establishment of the two school buildings in such school district a division of the district, territorially, may be made by such appropriate action. The division of the territory of such district must be made on some reasonable basis.

"3. There is no statute, nor does the law of this state sanction the segregation of Negro pupils in a common school district.

"4. The educational facilities of two schools maintained in the same school district must be on a comparable basis at all times in order to give each pupil in the district equal opportunity for a common school education.

### "RECOMMENDATIONS

"It is recommended that the division of said school district and the alloctaion of territory to each of the schools be made on a territorial or other reasonable basis. That the school district establish, maintain and operate the two schools located within the district on a comparable basis. In order to accomplish this the Walker school building should be constructed or reconstructed, thus making it fire proof, sanitary and as efficient as the building at the South Park School. The school equipment and facilities should be made uniform and comparable to that of the South Park School. The same educational program, including a kindergarten, the teaching of music, a lunch program, etc., should be instituted at the Walker school. The said building, facilities and program should be made ready for the school year commencing in September, 1949. In the alternative, the peremptory writ of mandamus prayed for in this action should issue."

The plaintiffs ask this court to confirm the commissioner's report except that they asked us to disregard Conclusion of Law No. 2 because it was ambiguous, confusing and not in conformity with the law; that we set aside and hold for naught the recommendations of the commissioner and that the peremptory writ of mandamus forthwith issue commanding the defendants to admit the plaintiffs and other colored pupils to what is known as "South Park Common Grade School" and that the plaintiffs recover their costs in the action, including a reasonable fee for their attorneys.

The defendants urge this court to adopt the commissioner's report. They made no attack upon the commissioner's findings. From the findings of fact we note that for generations School District No. 90 has maintained two separate school buildings, one known as the "South Park Grade School" and the other as the "Walker School," and that during that time the Negro children attended Walker School and the white children attended the South Park School and that until 1947 the two buildings were comparable and that in 1947 a new building was constructed on the site of the South Park building at a cost of approximately $90,000 and no provision was made for a new school building to take the place of the Walker School. Since defendants make no attack upon those findings, it would seem at the outset to be clearly established that defendants and their predecessors have for generations and perhaps since the district has been organized violated the laws of Kansas by segregating the white pupils from the colored pupils. There are very few matters of public policy any better established in this state than that grade-school districts cannot do this. (See *Board of Education v. Tinnon,* 26 Kan. 1; *Rowles v. Board of Education of the City of Wichita,* 76 Kan. 361, 91 Pac. 88; *Knox v. Board of Education,* 45 Kan. 152, 25 Pac. 616; and *Thurman-Watts v. Board of Education,* 115 Kan. 328, 222 Pac. 123.) There are some instances in Kansas where segregation can be had, that is, cities of the first class are authorized to maintain segregated elementary schools by the terms of G. S. 1935, 72-1724 The powers of the school boards of school districts such as School District No. 90, however, are provided for in G. S. 1947 Supp., 72-406, 72-1028 and 72-1044. Nowhere in these sections do we find any provision that school boards of districts of that type can maintain separate schools for colored and white pupils. It seems futile to labor the point any further. Such is the law. Even if the school building at the "Walker School" had been comparable with that of the "South Park School" still the school board would not have had authority to compel the colored pupils to attend one school building and the white pupils the other. It may not be amiss to observe that perhaps this trouble arose after so many generations of not having trouble because the white pupils were given the $90,000 building while the colored pupils were compelled to use the old building. That may be the reason for the trouble but it is no defense to the action. The commissioner's report in Findings 5, 6, 7, 8, 9 and 10 are to the effect that the facilities at the Walker School were inade-

quate as compared to those of the South Side School. We are not particularly concerned with that condition here. It may be the reason for this action having been filed but it is of no importance in the final conclusion we find necessary to reach.

The next three findings are to the effect that the pupils attending the "Walker School" have as high a scholastic standing as those attending the "South Side School." We are not concerned with that here. The findings then point out that the demands for the right to attend "South Side School" on the part of the Negro children were made after the completion of the new South Park building and they then point out that the boundaries of the attendance areas of the two schools were fixed by the resolution following these demands. The language of this and the next three findings are so significant we shall quote them here even though they have already been quoted in this opinion. Finding No. 15 goes on to state:

"15. By reason of these demands the school board did, at a special meeting held on May 15, 1948, adopt a resolution fixing the boundary of the attendance areas of the two schools. The metes and bounds of these attendance areas does not divide the district East and West or North and South, but meanders up streets and alleys and by reason thereof all of the Negro students are placed in the Walker School attendance area. Under this allocation the white children walk past the Walker School. There may be white families in the Walker area and Negro families in the South Park area. The evidence on this point was not too definite.

"16. The designation of the school area for each of the two schools, as set out in the resolution, clearly establishes that the two areas were not designated on a territorial, school census, or any other reasonable basis and such action taken by the officers of the school district was therefore arbitrary. Such designation does attain the result of segregating the Negro children in the Walker School whether such result was intentional on the part of the school officials or not.

"17. In the 1947-'48 school term there were 222 pupils in the South Park School and 44 pupils in the Walker School. In the 1948-'49 school term there are approximately 245 pupils in the South Park School and approximately the same number of pupils as in 1947-'48 at the Walker School."

It must be remembered that the defendants did not attack those three findings. They ask us to approve them. Thus we have a record showing that the school board by a process of gerrymandering created the Walker School attendance district by meandering up streets and alleys so that all of the Negro children would be within that district. To add to this we have a map of the school district. It shows the District No. 90 to be about two miles and a half long and a mile wide. The west boundary of the Walker

School district is a half mile from the west boundary of District No. 90; the north boundary is a quarter of a mile from the north boundary of District No. 90; the east boundary is a mile and a quarter from the east boundary of School District No. 90; and the south boundary is a half mile from the south boundary of District No. 90. The Walker School district is about in the center of District No. 90. The school buildings themselves are not very far apart. There seems no dispute but that some of the white children had to walk past the Walker Schoolhouse to get to the South Park School. In addition to that we have an explicit finding that the creation of the two areas was not on a reasonable basis but was arbitrary and had the effect of segregating the Negro children from the white children. Thus we have a clear case of the school board doing by subterfuge, that is, by the arbitrary creation of an attendance district within the district itself and thereby segregating the colored children from the white children, what it could not do directly. In 1947-'48 there were 222 pupils in the South Park School and forty-four in the Walker School. In the 1948-'49 term there were 245 pupils in South Park and approximately forty-four in the Walker School.

The first conclusion of law is that the action was properly brought and maintained by plaintiffs. Nobody disputes that now.

The second conclusion of law is, first that a common-school district may by appropriate action legally establish two separate school buildings within the territorial limits. Nobody disputes that. There is no doubt about that being the law.

The conclusion then states that a division of territory for attendance purposes may be made for the district. Nobody disputes that.

The next sentence of the conclusion of law states that the division of the territory of such territory must be made on some reasonable basis. The Findings Nos. 15 and 16 clearly are to the effect that the division of territory in the case of School District No. 90 was not made on any reasonable basis. The findings are to the effect that the division of territory was upon an unreasonable basis and was arbitrary.

Conclusion No. 3 was to the effect that no statute, nor law of this state, sanctions the segregation of Negro pupils in a common-school district.

Conclusion No. 4 is to the effect that the educational facilities where two schools are maintained must be comparable so that each

pupil will have an equal opportunity. Nobody disputes that.

We encounter some difficulty, however, when we examine the recommendations of the commissioner. He first recommended that the division of the school districts and the allocation of territory be made on a territorial or other reasonable basis. He then recommended that the district operate the two schools upon a comparable basis and pointed out the steps that should be taken in order to bring "Walker School" building up to the standard where it will be comparable to the "South Park School." There is a slight implication in these recommendations that the situation will be fully met with when the "Walker School" building is so repaired or reconstructed that it will be comparable to the "South Park" building. It is presumed that it is this recommendation upon which the defendants made their argument in this court that the report of the commissioner should be adopted.

However, that argument overlooks the first sentence of the recommendation, where it is recommended that the allocation of territory to each school be made on a territorial or other reasonable basis. The commissioner had found that the present allocation of territory was not on such a basis. We thus find ourselves confronted with the necessity of making an order which will deal realistically with the situation of District No. 90.

The judgment of this court will be that the report is approved in general. If the school district in its judgment so desires it may maintain two school buildings in the district and it may as a corollary of that divide the territory between the two schools and designate pupils from the territory who may attend one school and pupils from other territory to attend the other school. This allocation must be made, however, upon a reasonable basis without any regard at all as to color or race of the pupils within any particular territory. The standards and facilities for each school must be comparable. Colored and white pupils must be permitted to attend either school, depending on convenience, or some other reasonable basis. In the meantime pending such action, the colored pupils and all pupils in District No. 90 must be permitted to attend the "South Park District School" beginning with the school year of 1949-'50 and until any other building is brought up to the required standard. This court regards the present action of the school board as arbitrary and unreasonable and an attempt by subterfuge to bring about segregation which the statutes and the laws of this state do not permit.

This court will retain jurisdiction of this case to the end that the conduct of the district board may conform to this judgment.

The writ of mandamus will be allowed.